UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 22-cr-303 (ECT/DJF) |
| Plaintiff, | |
| v. | ORDER AND REPORT AND RECOMMENDATION |
| Raphael Raymond Nunn, | |
| Defendant. | |

This matter is before the Court on Defendant Raphael Raymond Nunn's Motion to Sever Counts 1 and 2 from the Indictment ("Motion to Sever") (ECF No. 38) and his Motion for Suppression of Statements ("Motion to Suppress") (ECF No. 39). The Court held a hearing on these Motions on March 9, 2023. (*See* ECF Nos. 43.) No testimony was offered during the hearing, but the Court admitted into evidence two Government exhibits: (1) footage Mr. Nunn's September 29, 2022 custodial interview conducted by the Hudson, Wisconsin Police Department; and (2) Mr. Nunn's written waiver of *Miranda* rights in connection with that interview. (*See* ECF No. 44.) For the reasons given below, the Court recommends denying Mr. Nunn's Motion to Suppress and denies his Motion to Sever.

**I.    Background**

    **A.    Indictment**

The Indictment charges Mr. Nunn with six Counts: kidnapping (Count 1); carjacking (Count 2); bank fraud (Counts 3 and 4); and aggravated identity theft (Counts 5 and 6) (ECF No. 14). The carjacking and kidnapping charges (Counts 1 and 2) stem from an incident on September 13, 2022, during which Mr. Nunn allegedly abducted a woman identified as "S.E.", taking her car

by force, violence and intimidation, and used an ATM in the process of committing these crimes. (*Id.* at 1–2.) The bank fraud and identity theft charges (Counts 3–6) arise from incidents on January 8, 2022 and August 9, 2022, during which Mr. Nunn allegedly used stolen debit and credit cards to make purchases at various gas stations, restaurants and retailers. (*Id.* at 2–5.) During the January 8 incident, Mr. Nunn allegedly robbed a woman identified as "C.L." of her purse to acquire the debit and credit cards used. During the August 9 incident, he allegedly stole a wallet belonging to another woman, "J.T.," to obtain and use her debit card. (*Id.*)

      B.      **Investigation and Arrest**

According to the Government, Ramsey County Police arrested Mr. Nunn in connection with the September 13, 2022 kidnapping after a man held S.E. up at gunpoint when she parked her car in an office parking lot in Arden Hills. (ECF No. 47 at 1–2.) The Government asserts he told her to get in the car and drive to Minneapolis, where he forced her to go to an ATM at a bank and withdraw money from an ATM machine. (*Id.*) After they left the bank, Mr. Nunn allegedly told S.E. she could get her car back after he got away. He then drove the car to an empty lot and left it. (*Id.*) Ramsey County Police allegedly tracked Mr. Nunn using outdoor video surveillance footage from the parking lot to a restaurant, which had video footage from which police were able to see the man's face and identify him as Mr. Nunn. (*Id.*).

In their investigation of this incident, Ramsey County police obtained a search warrant for Mr. Nunn's residence, where they found bank cards belonging to several other individuals. (*Id.*) According to the Government, this evidence ultimately led to the addition of the bank fraud and aggravated identity theft charges in Counts 3-6 of the Indictment. (*Id.* at 2–3.) The Government states that Ramsey County Police contacted the individuals whose cards it found at Mr. Nunn's property. (*Id.* at 3.) They learned that Oak Park Heights Police were investigating the theft of

J.T.'s wallet and laptop from an office building in August 2022. (*Id.*) Video surveillance footage of J.T.'s card being used matched Mr. Nunn. (*Id.*)

According to the Government, around the same time, Hudson, Wisconsin Police were investigating an incident in January 2022 during which a masked man robbed C.L. at gunpoint and took her purse after she parked her car at a Target store. (*Id.*) During the incident he allegedly put a gun to her head and threatened to shoot her if she didn't keep quiet. (*Id.*) A few days later she reported the cards in her stolen purse had been used, and police were able to obtain video footage of the man who used the cards but could not identify him. (*Id.*) Hudson Police later saw a crime alert posted by the Oak Park Heights Police regarding the theft from J.T. and matched the crime alert photo to the man in the video footage of C.L's cards being used. (*Id.*)

### C. Custodial Interview

During their investigation, Hudson Police learned Ramsey County Police had arrested Mr. Nunn for the incident involving S.E. (*Id.*) On September 29, 2022, Hudson Police officers called the Ramsey County Jail to ask Mr. Nunn if he would speak with them, and Mr. Nunn agreed. (*Id.* at 3–4.) The interviewing officers advised Mr. Nunn of his *Miranda* rights at the outset of the interview. (Ex. 2, 0:54–2:04.) Mr. Nunn answered "yes" when asked if he understood his entitlement to each individual right. (*Id.*) He also signed a written waiver of his *Miranda* rights. (Ex. 1.)

During the interview, Mr. Nunn admitted he was the individual shown in surveillance photos using C.L.'s cards but denied involvement in the robbery. (Ex. 2 at 3:20–3:30.) When pressed regarding how he obtained C.L.'s cards, Mr. Nunn chuckled and said: "I think I should get a lawyer dude[,]" at which point one of the officers briefly interjected and said, "OK." But instead of halting the interview, Mr. Nunn continued to explain, without pausing, that he "used cards, I

3

admit that. I used the cards, I purchased the cards at a gas station[.]" (*Id.* at 12:20–12:50.) The interview continued for roughly another 20 minutes, during which Mr. Nunn voluntarily answered questions and never again suggested he wanted to assert his right to an attorney. (*Id.* at 12:50–33:33.)

## II. Analysis

### A. Motion to Suppress

Mr. Nunn argues he invoked his right to an attorney by asserting "I should get a lawyer, dude[,]" during the September 29 interview, and that all statements during the interview after that point should be suppressed (ECF No. 46 at 1–3). The Government responds that Mr. Nunn's statement was not an unambiguous request for counsel, and that the officers did not need to stop questioning Mr. Nunn because he voluntarily continued to initiate the discussion after he made the statement. The Court agrees that Mr. Nunn did not unequivocally assert his right to an attorney and recommends denying his Motion to Suppress.

When a suspect requests an attorney during interrogation, law enforcement officials must stop their questioning until counsel is made available or the suspect reinitiates discussions with the officers. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). But officials only need to stop their questioning if the suspect's request for counsel is "clear and unambiguous." *United States v. Mohr*, 772 F.3d 1143, 1145–46 (8th Cir. 2014) (citing *Davis v. United States*, 512 U.S. 452, 461–62 (1994)).

Both *Davis* and *Mohr* compel denial of Mr. Nunn's Motion to Suppress. In *Davis*, the Supreme Court held that a suspect's statement, "maybe [I] should talk to a lawyer," was not a clear and unambiguous request for counsel. 512 U.S. at 462. And in *Mohr*, the Eighth Circuit held the defendant's statement, "I think I should get [a lawyer]," was not a clear and unambiguous request

4

for counsel. 772 F.3d at 1146 (bracket in original). Mr. Nunn's statement is not only virtually identical to the statement at issue *Mohr*—"I think I should get a lawyer dude"—but he also gave the investigators almost no time at all to respond before continuing his explanation of how he ended up with C.L.'s cards. (Ex. 2, 12:20–12:50.) When the accused himself initiates conversation after he has invoked his right to counsel, continued questioning is not objectionable. *Edwards*, 451 U.S. at 485. Mr. Nunn answered questions for another 20 minutes following this statement, never again suggesting he wished to invoke his right to counsel. (*Id.* at 12:50–33:33.) The Court recommends denying his Motion to Suppress for these reasons.

    **B.**    **Motion to Sever**

Mr. Nunn argues Counts 1 and 2 of the Indictment (the kidnapping and carjacking charges related to S.E.) should be severed from Counts 3–6 (the bank fraud and aggravated identity theft charges related to C.L. and J.T.), because they are not properly joined under Federal Rule of Criminal Procedure 8(a). He further argues that, even if all counts are properly joined, Counts 1 and 2 must be severed under Rule 14 of the Federal Rules of Criminal Procedure because allowing for a single trial on all charges would expose the jury to inadmissible character evidence and prejudice Mr. Nunn (ECF No. 46 at 5–6).

The Government argues Counts 1 and 2 are properly joined with Counts 3–6 under Rule 8(a) because they are of a same or similar character and part of a common scheme or plan. It further argues Mr. Nunn will not be prejudiced because: (i) Counts 1 and 2 and Counts 3–6 involve the use of a gun to rob a woman of her money, such that the nature of the evidence will be similar; and (ii) because evidence from Counts 3–6 would be admissible in a trial on Counts 1 and 2, and vice versa, because the investigations were connected such that the evidence overlaps (ECF No. 47 at 7–10). For the reasons given below, the Court finds Counts 1 and 2 are properly joined with

Counts 3–6 and that Mr. Nunn will not be prejudiced by a single trial on all counts. It accordingly denies his Motion to Sever.

### 1.      Joinder Under Rule 8(a)

Rule 8(a) permits joinder of charges "if the offenses charged … are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "The propriety of joinder is … determined from the face of the indictment." *United States v. Reichel*, 911 F.3d 910, 915 (8th Cir. 2018) (alteration in original) (citation omitted); *United States v. Mink*, 9 F.4th 590, 603 (8th Cir. 2021) (analyzing the propriety of joinder by exclusively looking to the indictment); *see also* 1A Charles Alan Wright et al., Federal Prac. and Prod. § 143 (4th ed.) ("As with joinder of defendants, the propriety of joining offenses in a single instrument is typically determined by examining the allegations in the indictment."). "However, '[t]he government is not required to put on a full court press on the evidence' for the counts to be properly joined at the outset." *Mink*, 9 F.4th at 603 (quoting *United States v. McCarther*, 596 F.3d 438, 442 (8th Cir. 2010)). "The joinder of all offenses against a defendant is a favored practice." *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992). Thus, Rule 8(a) is "to be liberally construed in favor of joinder." *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005).

"The joinder of offenses pursuant to Rule 8(a) is allowed in three situations: (1) when the offenses are of the same or similar character; (2) when the offenses are based on the same act or transaction; or (3) when the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." *United States v. Rodgers*, 732 F.2d 819, 820 (8th Cir. 1979); *see also, e.g.*, *United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011) (denying severance after having applied only the 'same or similar character' standard). "In

applying the 'same or similar character' standard, … joinder of offenses … [is] proper when the two counts refer to the same type of offense occurring over a relatively short period of time, and the evidence as to each count overlaps." *Garrett*, 648 F.3d at 625 (citation and quotation omitted). The elements of the crimes charged do not need to be the same. Rather, similar character means "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." *United States v. Tyndall*, 263 F.3d 848, 850 (8th Cir. 2001) (quoting United States v. Lindsey, 782 F.2d 116, 117 (8th Cir.1986) (per curiam) (quoting Webster's New Int'l Dictionary (2d ed.))  In applying the 'common plan or scheme' standard, courts look to whether the "offenses were all connected to a common scheme [or plan]." *Reichel*, 911 F.3d at 915; *see also United States v. Jawara*, 474 F.3d 565, 574 (9th Cir. 2007) (explaining that 'common scheme or plan' is a "self-defining" standard).

      Though the Indictment is not especially well-drafted, it adequately alleges a common plan or scheme across all counts of "stealing money and robbing others' payment cards and using them under false pretenses." (ECF No. 14 at 3.)  In Count 1, the Indictment asserts Mr. Nunn kidnapped Victim S.E. on September 13, 2022 for his "own benefit and purpose" and used an "instrumentality of … commerce, namely an ATM machine, [and] automobile" as part of the kidnapping (*Id.* at 1). Count 2, the carjacking charge, involves the same incident. (*Id.* at 2).  Although these offenses are more serious than those charged in the earlier offenses alleged in Counts 3–6, the underlying incident appears to be an escalation of the same pattern of conduct.  Kidnapping and carjacking someone to use an ATM machine is part of a common scheme of "stealing and robbing others' payment cards and using them under false pretenses." (*Id.* at 1–3.)  Because the Court must construe Rule 8(a) liberally, it will not order severance based on inartful drafting alone. *See Mink*, 9 F. 4th at 604 (finding joinder permissible under Rule 8(a)'s common scheme or plan test despite

7

the fact the indictment did not "explicitly allege a common scheme" because of the counts' "common characteristics"). The Court concludes the Indictment sufficiently alleges a common scheme or plan to satisfy Rule 8(a).

The Court also finds Counts 1 and 2 are similar in character to Counts 3–6. Though, at face value, kidnapping and carjacking are substantially different charges than bank fraud and aggravated identity theft, the Indictment makes clear that the alleged kidnapping and carjacking on September 13, 2022 involved the use of an ATM (ECF No. 14 at 1–2). Counts 3–6 similarly involve allegations that Mr. Nunn robbed victims and used their money cards to illegally withdraw cash. (*Id.* at 3.) Moreover, these events all occurred within a relatively short period of time. The incident at issue in Counts 1 and 2 took place approximately 9 months after the incident alleged in Counts 4 and 6, and less than a month after the incident alleged in Counts 3 and 5. *See, e.g., United States v. Boyd*, 180 F.3d 967, 981 (8th Cir. 1999) (denying severance motion when the period between first and last offenses spanned just under fifteen months)*; Garrett*, 658 F.3d at 625 (finding fifteen months a sufficiently short period of time for joinder under the similar character test). And as discussed in greater detail below, Counts 1 and 2 involve evidence that overlaps with the evidence for Counts 3–6. The Court finds the counts were properly joined.

    **2.**    **Severance Under Rule 14**

Under Rule 14, even if counts are properly joined under Rule 8(a), courts may order separate trials if "the joinder of offenses or defendants in an indictment … appears to prejudice a defendant[.]" Fed. R. Crim. P. 14(a).[1] "No prejudice results from the refusal to sever when

---

[1] The parties dispute whether Mr. Nunn needs to show "prejudice" or "severe prejudice" under Rule 14. *Compare* (ECF No. 46 at 5–6), *with* (ECF No. 47 at 7–10) (citing cases). Though the Eighth Circuit has expressly stated that a defendant must show severe prejudice, *e.g., United States v. Kirk*, 528 F.3d 1102, 1107 (8th Cir. 2008), it has suggested more recently that the "severe prejudice" standard is a function of its abuse of discretion review. *See Reichel*, 911 F.3d at 915

evidence of one charge would be admissible in a separate trial on the other." *Mink*, 9 F.4th at 604 (quotation and citation omitted). "Finally, there is a strong presumption against severing properly joined counts." *Id.* (quotation and citation omitted).

Upon reviewing the limited record available at this point—and without reaching any conclusions or otherwise intruding on the admissibility issues to be resolved by the District Judge—the Court finds evidence regarding Counts 3–6 likely would be admissible in a trial on Counts 1 and 2, and vice versa. *See United States v. Jama,* 21-cr-31-ADM-KMM, 2021 WL 4520995, at *3 (D. Minn. Oct. 4, 2021). Evidence of the kidnapping and carjacking may come into a trial on Counts 3–6 because, as the Government represents, the identification of Mr. Nunn in connection with the bank fraud counts originated from the investigation into the kidnapping and carjacking incident. Moreover, to the extent Mr. Nunn seeks to assert a defense that he was not S.E's kidnapper, surveillance evidence from the theft involving C.L. could be admitted as identity evidence for comparison with surveillance evidence from the kidnapping, since Mr. Nunn has already identified himself in surveillance footage concerning the theft from C.L. (Ex. 2 at 3:20–3:30); *see also See Jama*, 2021 WL 4520995, at *3 (predicting the admissibly of evidence for similar reasons). His earlier alleged thefts and robberies also might be admissible under Rule 404(b) as evidence of modus operandi. *See id.* (same). Because admissible evidence among the Counts likely overlaps, Mr. Nunn is not prejudiced by joinder. The Court denies his Motion to Sever for these reasons.[2]

---

("We review denial of severance under Rule 14 for an abuse of discretion and will only *reverse* upon a showing of severe prejudice[.]") (emphasis added) (citation omitted). For purposes of this motion, the Court assumes without deciding that Mr. Nunn only needs to show prejudice.

[2] There is a split among judges in this District regarding whether a motion for severance should be considered "dispositive" and resolved by a magistrate judge in a report and recommendation; or non-dispositive and resolved by a magistrate judge's order. *Jama*, 2021 WL

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Nunn's Motion for Suppression of Statements (ECF No. [39]) be **DENIED**.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Mr. Nunn's Motion to Sever Counts 1 and 2 (ECF No. [38]) **IS DENIED**.

Dated: May 4, 2023

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:** The Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

---

4520995, at *3 (collecting cases). Because motions to sever are not among the motions specifically exempted from magistrate judge determination under 28 U.S.C. § 636(b)(1)(A), the Court addresses the Motion to Sever as an order. However, Mr. Nunn is free to argue that a *de novo* standard of review should apply to this decision, should he raise objections, and the Court's decision to resolve this motion by order does not seek to tie the District Judge's hands in determining the standard of review applicable to any potential appeal or objection.